## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| **MICHAEL MCINTOSH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **v.** | ) | |
| | ) | |
| **CHECK RESOLUTION** | ) | |
| **SERVICE, INCORPORATED,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

NOW COMES the Plaintiff, MICHAEL MCINTOSH, by and through his attorneys, LARRY P. SMITH & ASSOCIATES, LTD., and for his complaint against the Defendant, CHECK RESOLUTION SERVICE, INCORPORATED, Plaintiff states as follows:

### I.    PRELIMINARY STATEMENT

1.      This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

### II.    JURISDICTION & VENUE

2.      Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.    PARTIES

4.      MICHAEL MCINTOSH, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Plymouth, County of Wayne, State of Michigan.

5.      The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to Seelye Wright West Kia  (hereinafter "Seelye").

1

6.     The debt that Plaintiff allegedly owed Seelye was for an automobile loan and/or automobile payment.

7.     At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

8.     CHECK      RESOLUTION      SERVICE,      INCORPORATED,      (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of Michigan. Defendant is incorporated in the State of New York.

9.     The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

10.    Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

11.    During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

12.    At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

13.    At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## IV.   <u>ALLEGATIONS</u>

14.    On or about March 12, 2010, Defendant's duly authorized representative Mr. Charles Barnes sent Plaintiff a correspondence in an attempt to collect a debt allegedly owed by Plaintiff to Seelye.

15.    The aforesaid correspondence stated "Payment in full is due immediately to avoid further legal proceedings."

16.    The aforementioned had the effect of conveying to an unsophisticated consumer that a lawsuit and/or other legal proceedings had been filed against Plaintiff.

17.    At the time the aforesaid correspondence was sent by Defendant to Plaintiff, Defendant had not filed a lawsuit against Plaintiff and/or initiated legal proceedings against Plaintiff.

18.    Defendant's representation that Plaintiff had to make an immediate payment to avoid further legal proceedings was false, deceptive and/or misleading given that no legal proceedings had been filed by Defendant against Plaintiff in relation to the debt he allegedly owed.

19.    The aforesaid correspondence failed to disclose that the communication was from a debt collector attempting to collect a debt and that any information obtained would be used for that purpose.

20.    The aforementioned statement in Defendant's correspondence, in conjunction with Defendant's failure to apprise Plaintiff that it was a debt collector, had the effect of conveying to an unsophisticated consumer that Mr. Barnes was an attorney.

21.    Upon information and belief, Mr. Barnes is not an attorney.

22.     On or about October 13, 2010, Defendant's duly authorized representative Mr. Bob Peters sent Plaintiff a correspondence in a further attempt to collect a debt allegedly owed by Plaintiff.

23.     The aforesaid correspondence stated "Payment in full is due on or before October 23rd, 2010 to avoid further legal proceedings. Failure to respond to this letter will result in immediate legal action."

24.     At the time the aforesaid correspondence was sent by Defendant to Plaintiff, Defendant had not filed a lawsuit against Plaintiff and/or initiated legal proceedings against Plaintiff.

25.     Defendant's representation that Plaintiff was required to pay Defendant on or before October 23, 2010 in order to prevent further legal proceedings was false, deceptive and/or misleading given that no legal proceedings had been filed by Defendant against Plaintiff in relation to the debt he allegedly owed.

26.     The aforesaid correspondence failed to disclose that the communication was from a debt collector attempting to collect a debt and that any information obtained would be used for that purpose.

27.     The aforementioned statements in Defendant's correspondence, in conjunction with Defendant's failure to apprise Plaintiff that it was a debt collector, had the effect of conveying to an unsophisticated consumer that Mr. Peters was an attorney.

28.     Upon information and belief, Mr. Peters is not an attorney.

29.     From in or around March 2010 through in or around October 2010, and on multiple occasions therein, Defendant initiated multiple telephone calls to Plaintiff.

30.    From in or around March 2010 through in or around October 2010, and on multiple occasions therein, Defendant left multiple automated voicemails for Plaintiff.

31.    Plaintiff's outgoing voicemail message does not identify Plaintiff by name such that any caller could reasonably conclude that only Plaintiff will be listening to voicemail messages.

32.    During the aforesaid automated voicemail messages, Defendant stated that it notifying Plaintiff of a pending claim in Defendant's office.

33.    Defendant further stated in the aforementioned automated voicemail messages that it was in Plaintiff's best interest to contact Defendant within twenty-four (24) hours.

34.    The aforementioned automated voicemail messages failed to advise Plaintiff that Defendant was a debt collector, that it was attempting to collect a debt and that any information obtained would be used for that purpose.

35.    At no time during the aforementioned automated voicemail messages did Defendant provide information relative to the individual caller's identity.

36.    From in or around March 2010 through in or around October 2010, and on multiple occasions therein, Defendant left additional voicemails for Plaintiff.

37.    Defendant's duly authorized representative, Mr. Dave Hanson, left multiple voicemail messages for Plaintiff.

38.    During the aforesaid voicemail messages, Mr. Hanson stated that if Plaintiff did not contact Defendant then Defendant would serve Plaintiff with a Summons at his residency or at his place of employment.

39.     Mr. Hanson stated that he had been contacted by Defendant to provide Plaintiff with a courtesy call before Plaintiff was served in relation to a bad check claim that was being filed against him.

40.     Mr. Hanson then provided Plaintiff with a putative case number for Plaintiff's claim and Mr. Hanson informed Plaintiff that he had "passed a bad check."

41.     The aforesaid voicemails failed to disclose that the messages were from a debt collector attempting to collect a debt and that any information obtained would be used for that purpose.

42.     The aforementioned statements in the voicemails, in conjunction with Defendant's failure to apprise Plaintiff that it was a debt collector, had the effect of conveying to an unsophisticated consumer that Mr. Hanson was an attorney.

43.     Upon information and belief, Mr. Hanson is not an attorney.

44.     The aforesaid voicemails left by Mr. Hanson conveyed that Defendant had or that Defendant was going to file a lawsuit against Plaintiff.

45.     The aforesaid voicemails had the effect of conveying that Plaintiff had engaged in check fraud and/or similar fraudulent conduct.

46.     Defendant's representations that Plaintiff had engaged in check fraud and/or similar fraudulent conduct were false, deceptive and/or misleading given that Plaintiff had not engaged in the aforesaid conduct.

47.     Defendant's statements that Plaintiff had engaged in check fraud and/or similar fraudulent conduct were statements made by Defendant to Plaintiff in an attempt to disgrace Plaintiff.

48.     From in or around March 2010 through in or around October 2010, Defendant's duly authorized representative, Charles, also left multiple voicemail messages for Plaintiff.

49.     During the aforesaid voicemail messages, Charles stated that an investigation was being processed against Plaintiff.

50.     Charles further stated that if Plaintiff did not contact Defendant then paperwork would be forwarded so that immediate action would be taken against Plaintiff in relation to a bad check claim.

51.     Charles additionally provided Plaintiff with a putative case number for a claim that Defendant allegedly filed against Plaintiff.

52.     Charles further informed Plaintiff to contact Defendant if he wanted to resolve his matter voluntarily.

53.     The aforesaid voicemails failed to disclose that the messages were from a debt collector attempting to collect a debt and that any information obtained would be used for that purpose.

54.     The aforementioned statements in the voicemails, in conjunction with Defendant's failure to apprise Plaintiff that it was a debt collector, had the effect of conveying to an unsophisticated consumer that Charles was an attorney.

55.     Upon information and belief, Charles is not an attorney.

56.     The aforesaid voicemails left by Charles conveyed to Plaintiff that if he did not contact Defendant and/or pay the debt he allegedly owed then Defendant would file a lawsuit against Plaintiff.

57.     Defendant's representations that an investigation was being process against Plaintiff in relation to a bad check claim were false, deceptive and/or misleading given that, upon

information and belief, Defendant had not carried out an investigation against Plaintiff relative to the aforesaid alleged conduct.

58.    Defendant's statement that Plaintiff had written a bad check was a statement made by Defendant to Plaintiff in an attempt to disgrace Plaintiff.

59.    During the course of the aforesaid time period, Mr. Sean Smith, a duly authorized representative of Defendant, also left a voicemail message for Plaintiff.

60.    During the aforesaid voicemail message, Mr. Smith stated that he was calling Plaintiff in relation to a fax that he had received in his office relative to a bad check issued by Plaintiff.

61.    Defendant further stated that it was providing Plaintiff with a courtesy call before it would send Plaintiff's paperwork relating to the "bad check issue."

62.    Defendant then provided Plaintiff with a putative case number and stated "you have been notified. Good luck."

63.    The aforesaid voicemail failed to disclose that the message was from a debt collector attempting to collect a debt and that any information obtained would be used for that purpose.

64.    The aforementioned statements in the voicemail, in conjunction with Defendant's failure to apprise Plaintiff that it was a debt collector, had the effect of conveying to an unsophisticated consumer that Mr. Smith was an attorney.

65.    Upon information and belief, Mr. Smith is not an attorney.

66.    The aforesaid voicemail had the effect of conveying to an unsophisticated consumer that if Plaintiff did not contact Defendant and/or pay the debt he allegedly owed then Defendant would file a lawsuit against Plaintiff.

8

67.    Defendant's statement  that it was calling in relation to a "bad check issue" was a statement made by Defendant to Plaintiff in an attempt to disgrace Plaintiff.

68.    During the course of the aforesaid time period, Plaintiff received another voicemail from Defendant.

69.    During the aforesaid voicemail message Defendant's duly authorized representative failed to provide information relative to the individual caller's identity.

70.    During the aforesaid voicemail message Defendant's duly authorized representative stated that Plaintiff must call Defendant regarding a "bad check issue."

71.    Defendant further stated that the service of Summons would be stopped if Plaintiff got this matter "straightened out" with Defendant.

72.    The aforesaid voicemail failed to disclose that the message was from a debt collector attempting to collect a debt and that any information obtained would be used for that purpose.

73.    The aforesaid voicemail had the effect of conveying to an unsophisticated consumer that if Plaintiff did not contact Defendant then Defendant would serve Plaintiff with a lawsuit.

74.    Defendant's representation that it would serve Plaintiff with a Summons was false, deceptive and/or misleading given that, upon information and belief, at the time the aforementioned voicemail message was left Defendant had not filed a lawsuit against Plaintiff.

75.    Defendant's statement  that it was calling in relation to a "bad check issue" was a statement made by Defendant to Plaintiff in an attempt to disgrace Plaintiff.

76.     On multiple occasions, during the course of the aforesaid time period, Defendant's daughters heard the aforesaid voicemail messages that were left by Defendant for Plaintiff.

77.     Plaintiff did not consent to Defendant contacting third-parties.

78.     Defendant's statements during the aforesaid voicemail messages, as delineated above, are neither statements made in an effort to seek payment from Plaintiff nor statements made to further the collection efforts of Defendant.

79.     The natural consequence of Defendant's statements was to unjustly condemn and vilify Plaintiff for his non-payment of the debt he allegedly owed Seelye.

80.     The natural consequence of Defendant's statements was to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

81.     The natural consequence of Defendant's statements was to cause Plaintiff mental distress.

82.     Defendant has not filed a lawsuit against Plaintiff for the debt he allegedly owes.

83.     Upon information and belief, at the time of making the aforementioned threats, Defendant had no intention of filing a lawsuit against Plaintiff for the debt she allegedly owes.

84.     Upon information and belief, Defendant has no authority to file a lawsuit against Plaintiff for the debt he allegedly owes.

85.     Upon information and belief, at the time of making the aforementioned threats, Defendant had no authority to file a lawsuit against Plaintiff for the debt he allegedly owes.

86.     In its attempts to collect the debt allegedly owed by Plaintiff to Seelye, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

> a.  Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and failed to identify

himself, failed to state that he is confirming or correcting location information concerning the consumer, and/or identified his employer without the express request of the consumer in violation of 15 U.S.C. §1692b(1);

b. Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and stating that the consumer owes any such debt in violation of 15 U.S.C. §1692b(2);

c. Communicated in connection with the collection of any debt with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector in violation of 15 U.S.C. §1692c(b);

d. Engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. §1692d;

e. Used obscene or profane language or language the natural consequence of which is to abuse the hearer or reader in violation of 15 U.S.C. §1692d(2);

f. Placed a telephone call to a consumer without meaningful disclosure of the caller's identity in violation of 15 U.S.C. §1692d(6);

g. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

h. Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

i. Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

j. Falsely represented or implied that a consumer committed a crime or other conduct in order to disgrace the consumer in violation of 15 U.S.C. §1692e(7);

k. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

l. Failed to disclose in communications that said communication was from a debt collector and that any information obtained during the communication will be used for the purpose of collecting a debt in violation of 15 U.S.C. §1692e(11);

m. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f; and,

n. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

87.     As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

## V.     JURY DEMAND

88.     Plaintiff hereby demands a trial by jury on all issues so triable.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, MICHAEL MCINTOSH, by and through his attorneys, respectfully prays for judgment as follows:

a.     All actual compensatory damages suffered;

b.     Statutory damages of $1,000.00;

c.     Plaintiff's attorneys' fees and costs;

d.     Any other relief deemed appropriate by this Honorable Court.

Respectfully submitted,
**MICHAEL MCINTOSH**

By: ___s/ David M. Marco_____
Attorney for Plaintiff

Dated: December 9, 2010

David M. Marco (Atty. No.: 6273315)
LARRY P. SMITH & ASSOCIATES, LTD.
205 North Michigan Avenue, 40th Floor
Chicago, IL 60601
Telephone:   (312) 222-9028 (x812)
Facsimile:   (888) 418-1277
E-Mail:     dmarco@smithlaw.us