UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL MCINTOSH,

    Plaintiff,

v.                                                  Case No. 10-14895
                                                  Honorable Patrick J. Duggan

CHECK RESOLUTION SERVICE, INC.,

    Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT**

On December 9, 2010, Plaintiff Michael McIntosh ("Plaintiff") filed this lawsuit against Defendant Check Resolution Service, Inc. ("Defendant") alleging various violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Defendant has failed to appear and defend this action, resulting in the Clerk of the Court entering a default on January 24, 2011. Presently before the Court is Plaintiff's motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), filed March 4, 2011.

According to Plaintiff, on March 4, 2011, he also served Defendant with a copy of his motion for default judgment via United States mail. On March 25, 2011, this Court filed a notice scheduling Plaintiff's motion for hearing on April 27, 2011, which it served on Defendant via United States mail.[1] Nevertheless, Defendant neither responded to

---

[1] The notice was mailed to Defendant at 1555 Kenmore Avenue, Kenmore, NY 14217. (*See* Doc. 9.)

Plaintiff's motion nor appeared at the motion hearing. For the reasons that follow, the Court grants Plaintiff's motion.

## I. Background

As indicated above, Plaintiff filed a Complaint for damages under the FDCPA on December 9, 2010. In his Complaint, Plaintiff alleges that he is a "consumer" within the meaning of the FDCPA, 15 U.S.C. § 1692a(3). (Compl. ¶ 7.) Plaintiff further alleges that he is purported to have incurred a "debt" as defined in the FDCPA, 15 U.S.C. § 1692a(5), and that Defendant is a "debt collector" under the statute, *id*. § 1692a(6). (Compl. ¶¶ 5, 8, 12.)

Plaintiff alleges that on or about March 12, 2010, Defendant's representative, Mr. Charles Barnes, sent him a correspondence demanding payment "immediately" of the alleged debt "to avoid further legal proceedings." (Compl. ¶¶ 14, 15.) Mr. Barnes' correspondence failed to convey that Defendant was a debt collector attempting to collect a debt and suggested that Mr. Barnes was an attorney, when it appears he is not. (*Id.* ¶ 20.)

On October 13, 2010, Plaintiff received another letter from a representative of Defendant, Bob Peters. (*Id.* ¶ 22.) In his letter, Mr. Peters stated that "[p]ayment in full is due on or before October 23[], 2010 to avoid further legal proceedings. Failure to respond to this letter will result in immediate legal action." (*Id.* ¶ 23.) No legal proceedings or lawsuits had been initiated against Plaintiff when this letter was sent to him. (*Id.* ¶ 24.) Mr. Peters' letter failed to disclose that the communication was from a

2

debt collector attempting to collect a debt and/or that any information obtained would be used for that purpose. (*Id.* ¶ 26.) The letter suggested to Plaintiff that Mr. Peters was an attorney, where it appears he is not. (*Id.* ¶ 27.)

Between March and October 2010, Defendant telephoned Plaintiff on numerous occasions and left multiple messages on Plaintiff's voicemail. (*Id.* ¶¶ 29-30.) According to Plaintiff, the outgoing message on his voicemail does not identify him by name or suggest that he will be the only individual listening to the messages. (*Id.* ¶ 31.) In its messages, Defendant failed to provide information relative to the caller's identity, to inform Plaintiff that it was a debt collector, that it was attempting to collect a debt, or that any information obtained would be used for that purpose. (*Id.* ¶¶ 34, 35.)

Defendant's representative, Dave Hanson, also left multiple messages on Plaintiff's voicemail between March and October 2010. (*Id.* ¶¶ 36, 37.) In these messages, Mr. Hanson stated that if Plaintiff did not contact Defendant, Defendant would serve Plaintiff with a summons at his residency or place of employment. (*Id.* ¶ 38.) Mr. Hanson informed Plaintiff that he had "passed a bad check" and that Mr. Hanson had been contacted by Defendant to provide Plaintiff with a courtesy call before Plaintiff was served in relation to a bad check claim that was being filed against him. (*Id.* ¶¶ 39, 40.) Mr. Hanson failed to inform Plaintiff that Defendant was a debt collector attempting to collect a debt and any information would be used for that purpose, and Mr. Hanson's statements falsely conveyed to an unsophisticated consumer that he was an attorney. (*Id.* ¶¶ 41, 42.) Mr. Hanson's statements to Plaintiff also suggested that Defendant had or was

going to file a suit against him. (*Id*. ¶ 44.)

During the same time period, an additional representative of Defendant, Charles, left multiple voicemail messages for Plaintiff. (*Id*. ¶ 48.) Charles stated in these messages that an investigation was being processed against Plaintiff and if Plaintiff did not contact Defendant paperwork would be forwarded so that immediate action could be taken against him in relation to a bad check claim. (*Id*. ¶¶ 49-50.) Charles also provided a putative case number for a claim that Defendant allegedly filed against Plaintiff. (*Id*. ¶ 51.) As with the previous callers, Charles did not inform Plaintiff that Defendant was a debt collector attempting to collect a debt or that any information would be used for that purpose, and his statements suggested falsely that he was an attorney. (*Id*. ¶¶ 53, 54.)

Between March and October 2010, Plaintiff received additional telephone calls from Defendant's representatives stating that they were calling regarding a "bad check issue" and suggesting that a case had been or would be filed against him. (*See, e.g., id*. ¶¶ 59-62.) Plaintiff's daughters heard the voicemail messages left by Defendant's representatives. (*Id*. ¶ 76.) Plaintiff never consented to Defendant communicating with third-parties.[2] (*Id*. ¶ 77.)

Plaintiff alleges in his Complaint that he suffered and continues to suffer personal humiliation, embarrassment, mental anguish, and emotional distress as a result of the

---

[2]The FDCPA defines "communication" to mean "the conveying of information regarding a debt directly *or indirectly* to any person through *any* medium." 15 U.S.C. § 1692a(2) (emphasis added).

statements of Defendant's representatives. (*Id*. ¶ 87.) In an affidavit submitted in support of his motion, Plaintiff states that he did not have the money to pay the alleged debt claimed by Defendant's representatives and therefore "was constantly stressed and anxious that I would be sued at any time by [Defendant] when I did not pay." (Mot. Ex. A ¶ 65.) Plaintiff further states in his affidavit that he was upset by the representative's statements that he was going to be served at home or work, as he did not know when or where he had to worry about being served. (*Id*.) Plaintiff also was upset by the information conveyed by Defendant's representatives, suggesting that a case was being or had been filed regarding a bad check he supposedly had passed when he had never engaged in check fraud. (*Id*.)

Plaintiff alleges that by engaging in the above conduct, Defendant violated various provisions of the FDCPA and he therefore seeks damages from Defendant. Specifically, Plaintiff seeks statutory damages of $1,000.00, actual damages for emotional distress in the amount of $2,250.00, and attorneys' fees and costs totaling $3,928.00.[3] On December 16, 2010, Plaintiff served Defendant with the Summons and a copy of his Complaint by personally serving Kim Slattery who identified herself as Defendant's "Director." (Doc. 4.) Ms. Slattery also has identified herself as Defendant's "managing agent."[4] (Doc. 10

---

[3] Plaintiff requested attorneys' fees and costs of $2,688 in his initial motion for default judgment. Plaintiff filed a supplemental motion to address additional issues which caused Plaintiff to incur further attorneys' fees of $1,240.00.

[4] Pursuant to Federal Rule of Civil Procedure 4(h)(1)(B), service upon a corporation may be effectuated "by delivering a copy of the summons and of the

Ex. C.)

On January 21, 2011, after Defendant failed to respond to the Complaint within the allotted time, Plaintiff filed a request for a Clerk's Entry of Default pursuant to Federal Rule of Civil Procedure 55(a). The Clerk entered a default on January 24, 2011, which was served on Defendant via United States mail. (Doc. 5.) As indicated earlier, Plaintiff filed the pending motion for default judgment on March 4, 2011, which also was served on Defendant via United States mail. As of this date, Defendant has not appeared or responded to Plaintiff's lawsuit in this Court.

## II. Applicable Law

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After the default has been entered, the party seeking relief from the defaulting party may apply for a default judgment. Fed. R. Civ. P. 55(b). An application for a default judgment may be made to the Clerk "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation . . ." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." *Id*. 55(b)(2).

Once a default is entered, well-pleaded allegations in the plaintiff's complaint,

---

complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and– if the agent is one authorized by statute *and the statute so requires*– by also mailing a copy of each to the defendant . . ."

6

except those pertaining to the amount of damages, are taken as true. *Alfa Corp. v. Alfa Mortgage, Inc.*, 560 F. Supp.2d 1166, 1174 (M.D. Ala 2008) (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)); *see also Trice v. Lake & Country Real Estate*, 86-1205, 1987 WL 38852, at *2 (6th Cir. Oct. 29, 1987) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir.1983) ("Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true.")) Nevertheless, the court still has an obligation to assess whether the factual allegations are legally sufficient to state the alleged cause of action. *See In re Industrial Diamonds Antitrust Litigation*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000) ("While a default constitutes an admission of all the facts 'well pleaded' in the complaint, it does not admit any conclusions of law alleged therein, nor establish the legal sufficiency of any cause of action . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." )

    Rule 55 indicates that the Court "may" conduct a hearing to determine the amount of damages. Fed. R. Civ. P. 55(b)(2)(B). An evidentiary hearing is unnecessary if sufficient evidence is submitted to support the request for damages, *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997), or if the amount claimed is one capable of ascertainment from definite figures in the documentary evidence or affidavits. *United Artists Corp. v. Freeman*, 605 F.2d 854, 867 (5th Cir.

1979); *see also Vesligaj v. Peterson*, 331 F. App'x 351, 354-55 (6th Cir. 2009) (unpublished) (noting that an evidentiary hearing is a matter of discretion). Numerous courts have awarded damages for emotional distress caused by violations of the FDCPA without a hearing, based on the statements contained in the plaintiff's affidavit. *See, e.g., Harding v. Check Processing, LLC*, No. 5:10CV2359, 2011 WL 1097642, at *2-3 (N.D. Ohio Mar. 22, 2011) (awarding the plaintiff $5,000 to compensate her for the emotional distress she suffered as a result of the defendant's FDCPA violations based on the allegations in the complaint and the assertions in the plaintiff's affidavit); *Carlile v. N. Am. Asset Serv., LLC*, No. 10-cv-3234, 2010 WL 5125846, at *2 (C.D. Ill. Dec. 9, 2010) (awarding the plaintiff $1,500 in actual damages for emotional distress based on the plaintiff's affidavit explaining in reasonable detail the circumstances of his injuries); *Annis v. Eastern Asset Mgmt., LLC*, No. 08-CV-458S, 2010 U.S. Dist. LEXIS 25538, at *12-15 (W.D.N.Y. Mar. 18, 2010) (awarding actual damages of $5,000 to plaintiffs for emotional damages caused by the defendant's FDCPA violations based on their affidavits, despite absence of medical evidence in support of their claims of emotional distress). However, "[w]here . . . the plaintiff's own testimony is his only evidence of emotional damages, he must explain the circumstances of his injury in reasonable detail and not rely on conclusory statements, unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action.'" *Harding*, 2011 WL 1097642, at *2 (quoting *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004) (abrogated

on other grounds by *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 127 S. Ct. 2201 (2007)).

### III.  Analysis

The allegations set forth in Plaintiff's Complaint and in his affidavit submitted in support of his motion for default judgment are sufficient to establish that Defendant, through its authorized representatives, violated the FDCPA in several ways, including but not limited to:

> 1) communication in connection with the collection of any debt with a person other than Plaintiff, his attorney, or any other person allowable under the statute in violation of 15 U.S.C. § 1692c(b);
>
> 2) engaging in conduct the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with the collection of a debt in violation of 15 U.S.C. § 1692d;
>
> 3) falsely representing by implication that they were attorneys in violation of 15 U.S.C. § 1692e(3);
>
> 4) falsely representing or implying that Plaintiff had committed a crime or other conduct in order to disgrace Plaintiff in violation of 15 U.S.C. § 1692e(7); and
>
> 5) failing to disclose in communications that said communication was from a debt collector and that any information obtained during the communication would be used for the purpose of collecting a debt in violation of 15 U.S.C. § 1692e(11).

Under the FDCPA, a debt collector who violates the statute is liable for "any actual damage sustained by [the plaintiff]," statutory damages as the court may allow up to $1,000, and "the costs of the action, together with a reasonable attorney's fee as determined by the court."  15 U.S.C. § 1692k(a).

Based upon Defendant's conduct, the Court finds that statutory damages of $1,000

are appropriate in this case. Further, Plaintiff presents documentation to support an award of attorneys' fees of $3,928 and litigation costs of $415.[5] Plaintiff submits documentation establishing that his attorneys expended 14.1 hours on this litigation at hourly rates ranging from $175 to $375 and that a paralegal at his attorneys' law firm expended an additional 3.1 hours at an hourly rate of $105.00. The Court finds these amounts reasonable. Finally, the Court finds that Plaintiff provides more than bare allegations of emotional distress to support an award of actual damages of $2,250.00.

Defendant's representatives disclosed the fact of Plaintiff's alleged debt in messages left on a voicemail that they had no reason to believe belonged to Plaintiff and that they had no reason to believe would be heard only by Plaintiff. In fact, several of the messages on the voicemail were heard by Plaintiff's daughters. Defendant's representatives falsely accused Plaintiff of passing a bad check and suggested that legal action had been taken or would be taken against Plaintiff with respect to this "bad check." Such communications accusing a person of a crime, which are heard by third persons, are likely to cause the average person humiliation, embarrassment, and/or mental anguish. Plaintiff provides that he was constantly stressed and anxious as a result of Defendant's threats to sue him and to show up at his home or workplace to serve him. Finally, Defendant's violations were not limited to a single incident.

## IV. Conclusion

---

[5]Plaintiff's costs consist of the $350.00 filing fee and $65.00 expended to serve the Summons and Complaint.

In sum, this Court finds that Defendant violated the FDCPA. The Court further finds that Plaintiff is entitled to recover damages as a result of those violations in the amount of $7,593.00 ($1,000 as statutory damages; $2,250.00 in actual damages; $3,928.00 in attorneys' fees; and $415 in costs).

Accordingly,

**IT IS ORDERED**, that Plaintiff's motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b) is **GRANTED**.

Dated: April 27, 2011                              s/PATRICK J. DUGGAN
                                                   UNITED STATES DISTRICT JUDGE

Copies to:
David M. Marco, Esq.

Check Resolution Service, Inc.
1561 Kenmore Avenue
Kenmore, NY 14217

Check Resolution Service, Inc.
1555 Kenmore Avenue
Kenmore, NY   14217